IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Ronald D. Leonard, | : | |
| Plaintiff | : | Civil Action 2:11-cv-152 |
| v. | : | Judge Sargus |
| Gary Mohr, *et al.*, | : | Magistrate Judge Abel |
| Defendant | : | |

REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge pursuant to Plaintiff's Second Request for Protective Custody Transfer (Doc. 28) and Defendants' motion for summary judgment (Doc. 39). For the reasons set forth herein, it is recommended that Plaintiff's request for injunctive relief be denied, and Defendants' motion for summary judgment be granted.

Defendants' motion for leave to supplement their motion for summary judgment, to correct certain inadvertent misstatements of fact (Doc. 41) is **GRANTED**, and Plaintiff's motion to strike this motion (Doc. 43) is **DENIED**. However, in light of this request to supplement the motion for summary judgment, Defendants' motion to strike Plaintiff's own supplement in opposition (Doc. 46) is **DENIED**. Furthermore, the Clerk of Court is **DIRECTED** to terminate Doc. 38, Plaintiff's response to the Court's order to show cause, as a motion.

1

**Factual and procedural background**.  Plaintiff is an inmate in the Ohio penal system, presently incarcerated at the Toledo Correctional Institution ("TCI").  He was formerly resident at the Chillicothe Correctional Institution ("CCI") and Ross Correctional Institution ("RCI").  Plaintiff was also a plaintiff in *Leonard v. Ohio Dep't of Rehabilitation and Corrections*, Southern District of Ohio Case No. 2:09-cv-961, litigation in which he alleged that the operators of CCI were deliberately indifferent to serious health risks to inmates from asbestos and black mold exposure.  On April 28, 2010, officials at CCI were advised by the United States Department of Homeland Security that someone at CCI had sent a package containing asbestos to the Office of the Inspector General in Washington, D.C.  An investigation at CCI identified Plaintiff as the likely sender, based upon a comparison between his handwriting and the writing on a note accompanying the asbestos.  On May 18, 2010, a Rules Infraction Board ("RIB") hearing was held, and Plaintiff was found guilty.  He was placed in segregated confinement, and his security level was increased from Level 2 to Level 3.

On August 25, 2010, Plaintiff wrote to the Ohio General Assembly Correctional Institution Inspection Committee ("CIIC"), complaining of asbestos at CCI and that an inmate named Joe Peck had labeled him a snitch.  Peck had, Plaintiff said, told him that his brother was a captain in the Aryan Brotherhood and that Plaintiff would be in danger when he returned to the CCI general population.  On August 31, 2010, the CIIC wrote to the warden of CCI to relate Plaintiff's complaints.  The warden subsequently responded to the letter on September 17,

2010, stating that staff had found no substantiated threat to Plaintiff's safety.

On October 4, 2010, Plaintiff submitted a grievance, stating that he had been threatened and taken from his cell by a corrections officer, Captain Clark, after complaining about asbestos exposure.  He mentioned further that he had already written to Bureau of Classification Chief Eleby and the CIIC concerning death threats he had received from the Aryan Brotherhood, and complained that Warden Knab had conspired to place his life in danger by arranging for his transfer to a Level 3 institution.  Plaintiff argued that Warden Knab's failure to authorize his transfer to a Level 2 institution instead was a violation of regulations.  The Chief Inspector denied the grievance, finding that decisions to elevate security classifications had to be appealed to the Bureau of Classification, not through the inmate grievance process.  Plaintiff was transferred to RCI on January 27, 2011.

On February 18, 2011, Plaintiff filed a complaint in this court.  He named as defendants the ODRC director, the warden of CCI, and several other employees of the Ohio Department of Rehabilitation and Correction ("ODRC"), and alleged that they had conspired to deprive him of his constitutional rights by permitting the RIB to find him, without sufficient evidence, guilty on a fabricated conduct report.  He stated further that Defendants had deliberately arranged for him to be sent to RCI, in hopes that he would be killed there by the Aryan Brotherhood, and requested that a preliminary injunction issue requiring ODRC to immediately transfer him to Hocking Correctional Facility ("HCF").  On March 3, 2011, the Magistrate Judge issued an initial screening report and recommendation, finding that an inmate has

3

no constitutional right to remain incarcerated in a particular prison or under a particular security classification. He also found that Plaintiff had failed to allege facts or present evidence sufficient to warrant a preliminary injunction, as he put forward only bare-bones assertions that his life was in danger.

On April 12, 2011, the District Judge issued an opinion and order modifying the initial screening report and recommendation. He found that the complaint was properly dismissed upon initial screening to the extent that it purported to state a claim for deprivation of Plaintiff's right to due process, but that it stated a colorable claim that Defendants were deliberately indifferent to a known risk to Plaintiff's safety in violation of his Eighth Amendment rights. The District Judge ordered Defendants to respond to the complaint and to Plaintiff's request for injunctive relief. On June 13, 2011, Defendants filed a brief, stating that Plaintiff had failed to provide any evidence that he actually faced a serious threat. They provided a declaration from Charlie Heiss, an assistant to the warden of RCI, who stated that he had reviewed prison records and determined that Plaintiff had never requested protective custody at RCI, and that as a result he had been in the general population since his arrival.

Plaintiff subsequently filed another motion for injunctive relief, and a request for expedited consideration of his motion, reiterating his desire to be transferred to another prison for his personal safety. He conceded that he had not sought protective custody at RCI, but stated that this was because it would entail solitary confinement for 23 hours per day. On August 22, 2011, Defendants responded to

4

this second motion, stating that Plaintiff had put forward no new grounds for transfer to HCF, and stating that his security classification is too high for that institution.  On September 2, 2011, Plaintiff submitted a request for protective control status, stating that he was going to be murdered by the Aryan Brotherhood.  However, on September 16, 2011, the protective control screening panel at RCI rejected Plaintiff's request, finding that the inmate he claimed was a lieutenant for the Aryan Brotherhood had already been released and that no other information supported his claims.

Shortly thereafter, on October 12, 2011, Plaintiff was transferred to the Toledo Correctional Institution ("TCI").  The Court issued an order for Plaintiff to show cause why, if he had been transferred out of RCI as he wished, his request for injunctive relief was not moot.  Plaintiff responded, stating that, being out of options to protect his safety, he had deliberately committed a rules infraction in order to be placed in segregated confinement, which had resulted in his transfer to TCI.[1]  However, in the segregation unit at RCI he had encountered an Aryan Brotherhood member named "West Jeff".  West Jeff had advised another inmate,

---

[1] Plaintiff insists (Doc. 38 at 5) that his August 9, 2011 "Notice of Second Request for Protective Custody Transfer" qualifies as a request to be placed in protective control.  He also asserts that Mr. Heiss committed perjury in his June 10, 2011 declaration (Doc. 18-1) by stating that Plaintiff had never requested protective control at RCI.  Notwithstanding that Mr. Heiss' declaration predated Plaintiff's August 9, 2011 motion, Mr. Heiss was apparently referring to requests to be protectively segregated within the same facility (O.A.C. §5120-9-14(A)), whereas Plaintiff refers to his repeated demands to be transferred to an entirely separate institution, *i.e.*, HCF.  *See* Doc. 19-3 at 1.

Michael Slager, a fellow Aryan Brotherhood member slated to be transferred to TCI, that Plaintiff had a contract on his life.  Accordingly, Plaintiff stated, he was still in danger, as Slager had now identified him to Aryan Brotherhood members at TCI.

**Summary judgment**.  This matter is now before the Court pursuant to Defendants' motion for summary judgment (Doc. 39) and Plaintiff's second motion for injunctive relief (Doc. 28).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993).  To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed

in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (concluding that the court must draw all reasonable inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). In responding to a motion for summary judgment, however, the nonmoving party "may not rest upon its mere allegations [...] but [...] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Celotex*, 477 U.S. at 324. Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; *see Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

**Exhaustion of administrative remedies**. The Prison Litigation Reform Act (PLRA) provides at 42 U.S.C. § 1997e(a) that "no action shall be brought with respect to prison conditions under §1983 . . . by a prisoner. . . until such administrative remedies as are available are exhausted."The "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Ohio inmates have grievance procedures available under the Ohio Administrative Code at §5120-9-31. A complaint may not be filed in federal court until the prisoner

7

has filed such a grievance, the grievance has been acted on, and the prisoner has exhausted all of his administrative appellate rights with respect to the grievance. *Wright v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997).

Furthermore, just filing a timely initial grievance is not enough to exhaust remedies under §1997e(a). The exhaustion requirement means that *all* administrative remedies must be exhausted. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001). If the grievance is denied initially, the prisoner must, within the time frame required by the administrative regulations, proceed on to the next step of the prison grievance procedure. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). An Ohio prisoner using the grievance remedies available under O.A.C. §5120-9-31 must, within five working days of the disposition of his grievance, appeal its denial to the Chief Inspector. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); O.A.C. §5120-9-31(H)(8). If he fails to do so, the prisoner has not exhausted his prison administrative remedies as required by §1997e(a). *Freeman*, 196 F.3d at 645.

A prisoner is not obligated to demonstrate on the face of his complaint that he has exhausted his administrative remedies. *Jones v. Bock*, 549 U.S. 199 (2007). However, defendants can raise failure to exhaust as an affirmative defense, and an inmate plaintiff, if challenged, bears the burden of establishing that all administrative avenues for redressing the grievance have been pursued. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998).

Here, the defendants comprise Gary Mohr, William Eleby, Robin Knab, Paul

8

Arledge, Theresa Magill, Lt. Tammy Smith, Sgt. Rick Branham, and Rob Jeffreys. They argue that Plaintiff did not exhaust his administrative remedies with respect to Defendants Mohr, Eleby, Arledge, Magill, Smith, Branham, and Jeffreys, as he did not mention any of these persons or details concerning their alleged wrongdoing in any informal complaints. Although Plaintiff argues in his memorandum contra that these persons were either conspirators to arrange for his death or failed to take adequate steps to protect him, he does not rebut Defendants' argument that he failed to file informal grievances against them and to otherwise pursue his administrative remedies.

The PLRA does not *itself* require that an inmate must have identified each defendant specifically in his grievances. *Jones*, 549 U.S. at 217-18. However, it does mandate that inmates must "complete the administrative review process in accordance with the applicable procedural rules". *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). In Ohio, an inmate grievance "must contain specific information; dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved". O.A.C. §5120-9-31(K). Plaintiff's grievances here therefore did not meet Ohio standards to adequately exhaust his administrative remedies, where they made no reference at all to these defendants' participation in attempts to harm or retaliate against him. Accordingly, summary judgment would be properly granted with respect to Defendants Mohr, Eleby, Arledge, Magill, Smith, Branham, and Jeffreys.

Plaintiff's October 4, 2010 informal grievance mentioned his allegations that

9

CCI Warden Knab had "conspired with her designees approving a Level 3 increase and transfer to [a Level 3] facility... because of retaliation for complaints concerning my life". (Doc. 39-1 at 4.) Defendants concede that "[i]f interpreted in a light most favorable to Plaintiff, it would at most show he administratively exhausted his claim as to Defendant Knab." However, Defendants argue, Plaintiff failed to comply with O.A.C. §5120-9-31(M), which provides that grievances against the warden must be filed directly with the office of the chief inspector. Furthermore, they argue, Plaintiff's grievance states that his real complaint is with his reclassification to Level 3, and appeals to inmate classifications do not proceed through the informal grievance procedure.

    The Court will assume, without deciding, that Plaintiff's October 4, 2010 informal grievance constituted a complaint that Defendant Knab had deliberately placed his life in danger through the mechanism of reclassifying him, and that it therefore did not constitute a simple challenge to inmate classification. Consequently, it will examine whether summary judgment is properly granted to Defendant Knab on the merits.

    **Eighth Amendment**. In its April 12, 2011 Order, the Court found that Plaintiff successfully pled claims for deprivation of his Eighth Amendment rights and for retaliation for exercise of his First Amendment rights. (Doc. 8.) A claim for violation of Eighth Amendment rights requires a plaintiff to show that prison officials acted with reckless disregard of a known risk of serious harm to him. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). There is, in the first place, "an

objective requirement that there be a substantial risk of serious harm." *Id.* at 834. Furthermore, the plaintiff must show that prison officials were aware of "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also Woods v. Lecureax*, 110 F.3d 1215, 1222 (6th Cir. 1997).

Plaintiff here has made an inadequate showing that he suffers a substantial risk of serious harm. He has repeatedly, in his pleadings and in informal complaints and other correspondence, alleged that he is in fear of his life from members of the Aryan Brotherhood. His claims are, in the first place, inconsistent. In his August 25, 2010 letter to CIIC, Plaintiff suggested that an inmate named Joe Peck threatened him with death at the hands of the Aryan Brotherhood for participating in the investigation of an assault. (Doc. 39-2 at 37-38.) In his objections to the initial screening report and recommendation here, though, Plaintiff stated that "this conflict erupted" between him and two members of the Aryan Brotherhood who had advised him that he "was a disgrace to the white race and therefor would be killed" for associating with black inmates. He implied that this threat had formed the basis of his letter to CIIC. (Doc. 6 at 5.)

Furthermore, Plaintiff presents no evidence other than these repeated allegations that any such dangers exist. Given the opportunity to do so, he has offered only the vaguest details concerning communications amongst Aryan Brotherhood members about the alleged contract on his life. Plaintiff has not

11

alleged that anyone ever attempted to assault him at CCI, RCI, or TCI.  He has presented no clear statement of where or when any Aryan Brotherhood members told him that his life was in danger, aside from Peck's alleged statement that his brother would kill him, and Plaintiff's claim that West Jeff spread news of the contract to TCI through Slager.  Prison officials are not required to accept prisoners' allegations of personal danger at face value without factual support; neither is the Court.

Where a claimant cannot meet the objective element that a substantial risk of serious harm exists, he cannot meet the subjective element that the defendant was aware of the risk and disregarded it.  Plaintiff has repeatedly insisted that Defendant Knab, in concert with others, transferred him to RCI with the deliberate intent that he be killed.  With respect to Defendant Knab, the record reflects only her response to the CIIC inquiry, in which she stated that "[n]o substantiated threat against this offender has been discovered."  (Doc. 39-2 at 36.)  Plaintiff has presented no evidence of this intention to kill him, aside from bare allegations that ODRC personnel sought to retaliate against him for complaining about black mold and asbestos.  He has presented no evidence at all that any ODRC personnel were aware of any identifiable risk to him from the Aryan Brotherhood or others.  Accordingly, summary judgment would be properly granted to Defendants on Plaintiff's Eighth Amendment claim.

**First Amendment retaliation**.  The Court previously found that Plaintiff had pled a claim that Defendants had placed him in segregated confinement, and had

arranged for his transfer to (the allegedly dangerous) RCI, in retaliation for his participation in certain litigation.  To prevail on a claim for retaliation, a plaintiff must show that (1) he engaged in protected conduct, such as an exercise of his right to access to the court system; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated, at least in part, by the plaintiff's protected conduct.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

That Plaintiff has engaged in protected conduct is not in dispute; he has brought at least four other actions in this court concerning conditions of his confinement.  However, Plaintiff has, again, offered nothing more than bare assertions that Defendant Knab and others must have been motivated by revenge for his whistleblowing.  "[B]are allegations of malice" do not suffice to establish a constitutional claim.  *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).  Even if an inmate plaintiff can show that his protected conduct was a motivating factor in the defendant's action, a prison official can defeat a retaliation claim by showing that he would have taken the same action regardless of the presence of protected activity.  *Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007), following *Mount Healthy City School District Bd. of Education v. Doyle*, 429 U.S. 274 (1977).  Here, Plaintiff was charged with mailing a toxic substance to a government agency, and (although he disputes his guilt) evidence supported the charges.[2]  That he was

---

[2] Plaintiff disputes his guilt, or at least the sufficiency of the evidence that convicted him.  He argues, *inter alia*, that the handwriting on the letter sent to

disciplined by the RIB is not surprising, and there is no basis to suppose that the prison rule against harassment through the mails was inconsistently applied here. *See also Jackson v. Madery*, 158 Fed.Appx. 656, 662 (6th Cir. 2005) ("[a] finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates' a retaliation claim"). Defendant accordingly meets her burden of showing that the segregated confinement was not retaliatory in nature.

Plaintiff also argues that his transfer to RCI, which he represents Defendant Knab was aware would expose him to danger from the Aryan Brotherhood, was an adverse action. Transfers from one prison to another typically do not constitute adverse actions, as these are a routine feature of prison life. *Smith v. Yarrow*, 78 Fed.Appx. 529, 543-44 (6th Cir. 2003). However, the Sixth Circuit Court of Appeals has held that a transfer that would deter a prisoner of ordinary firmness from continuing to engage in protected conduct (such as transfer to a prison with dangers specific to the plaintiff) can constitute an adverse action. *Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005). Nevertheless, Defendant has presented evidence that Plaintiff's security level was increased to Level 3 as a result of his RIB conviction, and that he was thereupon transferred to a Level 3 institution. (Doc. 39-2 at 32.) Again, a "proven infraction of prison rules will generally satisfy the defendant's

---

Washington D.C. was never examined by a professional handwriting analyst. However, even false accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing. *See Cale v. Johnson*, 861 F.2d 943, 953 (6th Cir. 1988); *McMillan v. Fielding*, 136 Fed.Appx. 818, 820 (6th Cir. 2005).

burden" of showing that the adverse actions were not taken in retaliation. *Eby*, 481 F.3d at 442.

  <u>Conclusions</u>.  For the foregoing reasons, I **RECOMMEND** that Defendants' motion for summary judgment be **GRANTED**, on grounds that Plaintiff failed to exhaust his administrative remedies with respect to all defendants other than Knab, that no genuine issue of material fact exists as to whether Knab violated Plaintiff's Eighth Amendment rights by acting with reckless disregard of a known risk of serious harm to him, and that no genuine issue of material fact exists as to whether Knab violated his First Amendment rights by retaliating against him for exercising his right to access to the court system.  I further **RECOMMEND** that Plaintiff's motion for injunctive relief (Doc. 28) be **DENIED**.

  If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the party thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

  The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  Even when timely objections are filed,

appellate review of issues not raised in those objections is waived.  *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991).

s/Mark R. Abel<br>
United States Magistrate Judge